The first case for argument is 22-1957, Q3 Networking v. ITC. Mr. Kimball, whenever you're ready. Thank you, Your Honor. Justin Kimball for the Appellant, Q3 Networking. May it please the Court. The Commission's near wholesale and verbatim adoption of intervener's advocacy is not a reasoned decision under the APA. Thus it is arbitrary and capricious and should be remanded. And is that what you told the Commission on review? Yes, Your Honor. In the petition, we said, I believe it is six times, that there was extensive copying. We've cited that in our brief, and I can give you additional sites here. Well, yeah, but extensive copying doesn't at least do it for me, because what you started off by saying, which is what I think you would like the case to be about, was it a sufficiently reasoned decision under the APA. Did you make that argument to the Commission? We did not cite the APA, Your Honor. No, we did not. We said, for example… Who really cares? I mean, if the ALJ copies a bunch of findings of fact and conclusions of law, these are huge records. The proceedings have a huge number of issues, and they're incredibly compacted in time. This is the way it works. As long as the ALJ looked at this, and then you pointed out to the Commission that there was copying, and the Commission apparently was on notice and still found that the ALJ's decision was okay. Who cares that they copied it, as long as we know that they reviewed the ALJ's findings and agreed with them to the extent they did? It seems an incredibly weak argument to me. I think if you had an argument about the sufficiency of the findings and think they're wrong, rather than this kind of insubstantial procedural argument, you should be focusing on why the Commission is wrong, not how it went about making a decision. Thank you, Your Honor. A couple of responses. I'll maybe start at the end and go backwards. With respect to making specific substantive arguments, we do identify some such arguments. It is impossible, seriously, within the page limits that we have to address all of the issues because of the amount of copying. It wasn't just a piece here and a piece there. I don't understand what you're saying. It was impossible to address the issues because of the copying? What has one got to do with the other? Yes, Your Honor. The issue is this. What we have is, we have respondents file these post-hearing briefs. They're very long, as you point out. Ninety percent plus of that is copied into the initial determination blessed by the Commission. All that means is the ALJ agreed with them. Well, it could mean that. That's fair. But we don't know why the ALJ agreed with them. Because it's just their arguments. It's their advocacy. It's not what we would normally see. Well, he agreed with their advocacy. He puts it in as his. Otherwise, he could copy what they said and put it in quote marks and then say, I agree with everything they said. Respectfully, what I would say is, that's generally not what we see. That's not what we see in legal opinions. That's what has been criticized in the cases that we've cited. Normally, the advocates make their arguments. Judges, as you all do, you receive those. You wrestle with them. Then you explain your reasoning why one side or the other is right. But his reasoning duplicates their reasoning. And he didn't feel like reinventing the wheel. So what I would say to that is, I can see that in certain respects, perhaps. I do think it's a reasonableness test. I mean, that's what the cases that we've talked about. It's about a zone of reasonableness. So I understand and see opinions where portions of briefs might be quoted or that very closely track. And I understand that. But we're talking about the analysis for three patents on infringement and technical DI almost verbatim. It's hard to – Now he thought they had good arguments and you had bad arguments. So he adopted yours. Why aren't you challenging the arguments rather than saying on this record – and, I mean, you're doubly in trouble here because not only did the ALJ adopt not all but maybe most. You told the commission he did that. And nonetheless, they still affirmed. So they've looked at it. They knew there was company. And they're still OK with it. Why should we care how the commission operates for its findings of fact and conclusions of law as long as we can discern the legal basis and the factual basis for their conclusions and review them under the proper standard? Unless they're challenged by you on the merits, which you agree to do and you haven't done. So we've done it in some respects that understood. We haven't challenged, you know, the entire opinion. What I was trying to say earlier is because every – because the respondents challenged every element of every claim and because all that was adopted, we couldn't, within the page limits, even fully overturn all of those issues. It's very unusual. Isn't that true of every – I mean, see, we don't get that many ITC cases on appeal, but all of them contain voluminous – I mean, this one was over 300 pages. I don't think that's outside of the norm of the ALJ opinions we get from the ITC. No one has ever come up to us and said it's so voluminous and we didn't have enough pages so we couldn't challenge the merits of the case. It's just to be – so first of all, I agree with Your Honor. Generally, I think they're very wrong. It's not per se wrong just because they copied. So to say that we couldn't challenge all the evidences of copying, we only challenge the ones where you think the conclusion of law or the factual finding is incorrect. This happens all the time on appeals. You can't make every argument on appeal that you think where the district court or the agency or whatever got it wrong. That's not the way appellate practice works. Understood. You pick the important ones. Yes, Your Honor. Understood. And generally, you can identify whatever it is, one, two, three, issues that would overturn the case in your favor. Here, this is what I'm trying to say. That's literally not possible to do because of the amount of issues. You can't read the ALJ's opinion and say, well, I guess on that one we don't really have a good basis to challenge it. Your presumption is because he copied, it was wrong. And my response to that is that is an insubstantial argument. Copying alone does not mean the ALJ got it wrong. You have to look at what the finding of fact was or the legal conclusion and determine whether under the appropriate standard of review that's something you want to pursue further, rather than just complain about copying. I understand Your Honor's position. I respect it, obviously. I would say two things, first of all. Are you interested in talking about the merits? Because, you know, I'm done asking you about this. I mean, you're not going to win with me on this copying issue. So if you want to waste your time, you can keep doing it. Whatever arguments you think you've preserved in the briefing of this case. Sure. So, Your Honor, what we did is we provide some examples to try to demonstrate that there were real issues and it wasn't just copying. And so we did that with respect to the 677 patent and the 853 patent. And so with respect to the 677 patent, we identified Claim 1 and we talked about issues with the preamble and claim elements 1A, B, and C. And then with respect to the 853 patent, we just addressed Claim 1. But is that proper for us as an issue? Is that your view? Yes, Your Honor. I think it's probably for you as an issue. It's addressed in our opening brief. Well, you talked about failure to consider contrary evidence. I didn't know whether that was under the heading of didn't have a reasoned explanation for a final determination and didn't consider all the evidence and arguments. It didn't strike me as you were making a merits decision, although I certainly agree with Judge Hughes. It's probably what you should have done. Yes, Your Honor. So this would be Section 3B starting on page 10 of our opening brief. Yes, that's exactly where I am. What is the merits argument you think you put before us with respect to Claim 1 of the 677? Okay, so we have several. Now, here again, this is a punk deck to win on all three of these, but nonetheless. First of all, the ALJ appears to have, well, he did not find preamble limiting, like didn't make a finding of that, but sort of by implication did because then he required that the accused systems include two communicating devices, which is only present in the preamble. And your argument is preamble is not limiting. Actually, yes. My argument, first of all, is that nobody made the argument one way or the other, but effectively he found it. But, yes, that it's not limiting and that that demonstrates that the ALJ just accepted their brief and didn't. But the argument you were making here under 3A on page 10 is the pervasive nature of the Commission's copying of Respondent's briefs precludes review on the merits. So you weren't asking us to review the merits, right? Yes, Your Honor. So that goes back to what I was trying to explain earlier, that our view was that it precludes review because of what I've described about the extent of the copying and I'm trying not to say that again because I feel like we've gotten past it. That is what we said. We said we don't think that it can be fairly reviewed because it isn't clear the reasons why the ALJ came to this determination. So we have no merits issues in front of us in this appeal. You say it's because it's impossible to do, but you concede we have no merits issues. Well, didn't he adopt a finding of fact or a conclusion of law that you could have challenged on the merits and said this is a wrong interpretation of the law, or this is a wrong claim construction, or his finding that there is no infringement here is incorrect as a factual matter? There are all those findings in there that you could have challenged on the merits. To your point, we would have needed to find, you know, one or more, some manageable amount that would actually turn this around and send it back. What if he had written the opinion from scratch, word for word, and ruled against you on every single issue, right? It makes no difference whether he copied or not. You lost on every single issue, and you have to win on a bunch of them to prevail. But you could have argued, at least to the commission, because you get more pages there, I think, that he got all of them wrong, and he could explain why he got them wrong. You didn't do it. Actually, before the commission, we did try to do that. Well, you didn't do it to us. And that has to do with, yes, Your Honor, that is true. We did not do that here. What we tried to say is that we do think in— I mean, if there were too many, you know, findings against you for you to raise here to win, then maybe you shouldn't have taken the appeal at all. Fair enough, Your Honor. I hear what you're saying. You know, we felt, and we felt like the cases that we cited supported this argument that it wasn't a recent decision, but I, you know, accept your comments. I suppose at this point I'm going to end to the rebuttal. I suppose I'll save it. Thank you. Thank you. Mr. Lieberman, you first up. Good morning. May it please the Court. I will start with responding to the issues that were discussed in the counsel's argument. So on the first issue, the problem for Q3, it appears it's not the length of the ID. It's just the fact that they lost on many issues. And won on some, right? No, actually they didn't win on anything. I don't think they prevailed on validity. Well, the validity, they prevailed on the validity, but as for the infringement and technical problem, on all of the issues. Yes, on the economic problem and the validity they prevailed. It could have been worse for them. They could have had more issues to appeal. The commission decided not to take the position on the economic problem. So to summarize what happened here is that there were two problems with the Q3's position. First, they waived their argument that the commission determination is arbitrary and capricious. They waived this argument. They never raised it properly before the commission. And his answer to that, in the briefing at least, was, well, he had copying all over the place. Clearly he put the commission on notice that he had a problem and a concern with the fact that the ALJ copied. Well, there are certain requirements as to proper raising the issues for the commission's review. There is a precedent of this court, the decisions of Finnegan and Smith-Klein, and also the commission rule. But what more would he have had to do to appropriately preserve the right? Would he have had to say every time he said they copied it, I think he also mentioned, and they didn't deal with a lot of the issues that I raised, would he have had to say, and that was arbitrary and capricious and failed to satisfy reasoned decision-making? No, they had to develop their argument and to present the concise argument as required under this precedent and under the commission rule. But I think his concise argument is that because it was wholesale copying, it was arbitrary and capricious. That may be a loser argument, but there's not much more to it. Well, but they didn't even put this argument in the petition. They never said it's arbitrary. Well, no, that is my question to you is if they had said that in the petition, if they had said not just they copied, they copied, they copied, but they copied and therefore it was arbitrary and capricious and we are missing any reasoned decision-making, would that have been sufficient to preserve the issue for appeal? Well, as a hypothetical, we consider that, but I don't think that will suffice because there should be some citing at least of the record, some citation of the authorities. Now, in this petition that they filed … So you're saying it wouldn't have been sufficient, it seems to me, because they would have lost it because they didn't give you enough, not that it was weighed. No, but even if it's one issue, they have to properly raise this issue before the commission and there are certain requirements that they have to satisfy. Out of more than 100 pages … I'm not sure why you're finding this hypothetical. If they say there's wholesale copying, that renders ALJ's decision arbitrary and capricious because it doesn't show reasoned rulemaking or reasoned decision-making and it violates the APA, that raises the issue, doesn't it? Well, that raises the issue … It raises that issue. That raises the issue. They believe that that raises the issue. I thought the commission … Under the existing precedent, again, it's an expression of disagreement, it's a complaint, I agree with that, but it's not a properly presented argument according to the precedent and according to the commission rules. But again, in this case, it's not dispositive because they fail to argue that it's arbitrary and capricious before the commission and they also disregard and don't comply with controlling precedent that governs this issue of alleged copying. And under this precedent, and we cited it in our brief, that various decisions, including Supreme Court decision in Anderson v. Bessemer City, even where the judge copies verbatim the parties' proposed findings, those findings become the findings of the court and they can be challenged on appeal under the appropriate legal standard, which in this case would be substantial evidence standard. If I understand your argument, and this is the argument that I think the interveners presented quite clearly, there's a waiver argument here, it may or may not carry the day, it's a strong one, that they didn't include the challenge under the APA to the deficiency, they just said there was copying, full stop. Right. But even if they had, even if the argument made on appeal had been preserved below, it's clearly insufficient for the reasons that your brief and the intervener's brief outline, right? That's exactly correct. They never argued before this court that the commission's determination is not supported by substantial evidence. They never challenged the merits of the determination. That's exactly what they did before the commission. So before the commission, they waived the argument that the determination is arbitrarily capricious, but by not arguing in their opening brief that the determination is not supported by substantial evidence, they waived that argument too. What about the secondary argument, which I think they did preserve arguably below, which is they said there was copying, they didn't recite the APA, but then they also complained that their arguments were never considered by the ALJ. What about that argument? And that argument, I think, is made to us as well. That's sort of part two of their argument. Right. What do you have to say about that? So copying per se, under the controlling precedent, it's not, there is nothing wrong with copying. It's not a practice that is encouraged. But copying in itself, it doesn't create, it doesn't indicate an error. Let's stop talking about copying now. I'm talking about something maybe related, but it was copying and, and I think we can treat it as a separate issue, that they never responded to any of the arguments or most of the arguments. Right. There was the second argument. Okay. So that's what I want you to address. Okay. The second argument was that the ALJ didn't discuss expressly, didn't mention explicitly every single argument and every single piece of evidence that were presented by Q3. That was their complaint. Again, they weighed it because they never argued that the commission's determination is arbitrary and capricious for that reason before the commission, so it's also weighed. But substantively, it's also governed by certain precedent, which says that the commission's determination is presumed to have conceded all the arguments and all the evidence, even if the judge didn't expressly mention that. And Q3 just disregards that. They argue as if this precedent doesn't exist. Okay. I'm sorry. I see. No, it's time. We've divided. You've split the time with the intervener, so let's hear from the intervener. Okay. Thank you. Ms. Goldenberg, good morning. Thank you, Your Honor, and may it please the Court. There are at least four problems with Q3's arguments. First, Q3 did not raise its complaint of arbitrary and capricious decision-making by copying before the commission, so the argument's been forfeited. I've heard questions about what would have been sufficient. I don't think it would have been much. I think a paragraph would have been enough to raise this issue before the commission. Q3 wouldn't have necessarily needed to raise it for every single limitation, but a simple paragraph explaining, citing the cases that it's provided to this court, would have been sufficient to raise this issue. But just preserve it, but not to win it, in your view, I guess. Exactly. Exactly. Just to preserve it before the commission. Because what would have happened then? We would have had a response where we could have responded to it, we could have cited the cases that we've cited to Your Honors, and then the commission could have commented on it. We don't have the benefit of that because it wasn't raised. Would they have to at least cite the APA or the arbitrary and capricious standard in that paragraph? I would expect so. Because of this Court's precedent, this is a very perfunctory statement, isn't enough to preserve an issue. So I think a citation or two would have been enough. This Court has commented frequently about what is and isn't enough to raise it. And here, raising this issue could have been done. There was no page limit below or anything preventing them from providing a paragraph or two, a cite to the APA, the arbitrary and capricious standard. And none of that happened here, right? Correct, Your Honor. Second, Q3 complains of a failure below to address contrary facts and argument, but Q3 neglects to explain how that is important or how that means the decision is unreasonable and unsupported by the record as a whole. That creates a separate forfeiture argument because it hasn't raised the merits arguments that Your Honors were asking about before. And third, even if the Court considers Q3's issues presented, there's plenty of evidence of a careful and thoughtful agency consideration of the record, including but not limited to the Commission's decision to adopt the initial determination on only two of the three dispositive issues. The Commission's correction of citations, detailed citations to the record, showing that they engaged with the evidence and considered the arguments. So can I interrupt you just a minute? I'm trying to figure out, not this case, but hypothetically, what would have been sufficient. So let's stick with not the copying, but the fact that if one party raises six fulsome arguments and we decide or whoever below decides and completely ignores all those arguments, never even mentions it as if they never read the paper, is that a problem? And if it is, what does the other side have to show? Does it have to show that these, is it a merits kind of dispute? Like they were wrong. It's not procedural because they didn't consider our arguments. They were wrong because our arguments were right. I think the answer would be ideally both, right? They would show that they didn't address any of these six arguments that we've raised, and in addition, on the merits, they should be considered or at least remanded for a factual finding in the first instance. But they'd have to make some showing that there's some gravitas or heft or merit to their arguments. I mean, a lot of times we have, you know, we end our opinions by saying we've considered all the other arguments made by the appellant and we reject them. We don't go through every single argument made, and we don't feel we're compelled to do that. I agree with Your Honor on that point, yes. And that's, as we've seen in, for example, the D.C. Circuit has said that the agency can make some missteps, but the burden is still on petitioners to demonstrate that the agency's ultimate conclusions are unreasonable as long as there's a clear basis to understand and review the opinion. And here there's a 321-page opinion, most of which was adopted by the Commission. It didn't adopt the economic wrong aspect of it, but the rest was adopted, and we have an enormous citation to record on those issues. I want to respond as well to the point that the appellants have made about, well, we were limited in word count to this Court, and just point out that in the procedures, the Federal Circuit rules, you can file a motion asking for more word count, which is a procedure that they elected not to do instead of raising this issue that we agree with Judge Hughes is insubstantial. So there were other avenues if that was truly the problem where I think this issue could have been raised to the Court in a more fair way so that we could all stand here today and address the merits that they elected not to. It seems like there was at least a few instances where the copying included copying certain typographical errors that the parties, I'm sure, inadvertently had in their briefs. Is that any kind of red flag? It isn't because there's also several instances of where the ALJ fixed things, fixed changed words, and more importantly, the Commission made some corrections as well to citations on the record. Should we not assume that maybe the ALJ was careful on some days and not careful on other days? Presumably it took more than one day to put together a 300-page opinion. I think we don't necessarily need to get that granular into the ALJ's head here. What we're just concerned with is whether or not there was a reasoned decision, whether or not he considered the record evidence, and there's plenty of evidence here that he did. And I want to also point you to Appendix Page 317, which is where the ALJ cited to Q3's post-hearing briefs, including the reply that they claim its arguments were ignored for allegations of infringement of the 853 patent. So, yes, maybe there were some typos that were copied over. I think Judge Hughes hit the nail on the head that this is a tremendous record and a tremendous burden on the agency and a tremendous time limit, too. These cases move very quickly below, which is to the benefit of all parties. But because of that, sometimes, you know, typos do happen and mistakes do happen in citations, and we saw that from the ALJ. But we saw the Commission correcting those citations, showing that they engaged with the evidence. There were two levels of review here. It was the ALJ who looked at it and then the Commission that also looked at the issues on the merits because they didn't even challenge the copying as its own separate issue. And there were separate concurrences by a couple of Commissioners. Absolutely. And that's significant, too, is that there were concurrences, and they weren't just broad, general concurrences. There was a concurrence on a claim construction, and there was a concurrence as well on an issue of whether there could be infringement under other hypothetical circumstances, showing, again, the extreme level of detail and attention that the Commission paid to this case. There's also just extensive record evidence showing that the ALJ participated. There were 60 motions filed in this case, including for summary determination that the ALJ had to decide. By the time he got to writing his opinion, he had already written and decided 60 motions. He had already had before him thousands of exhibits, thousands of pages of testimony. He heard three days of live testimony. There was extensive consideration provided to this case. This case is just very far from any of the other cases where we've seen concerns even about decision making. Thank you. Thank you, Your Honor. Your Honor, I'll be brief. I just want to address just a couple of quick points and answer any other questions that you have. With respect to the forfeiture, we do think that our raising of this issue was sufficient, and it's different than an example where for cases like Google Tech, which is a case that was cited where a claim construction was just not brought up and it was brought for the first time here. We think we clearly explained under that this was sufficient. I mean, that this was an issue, and we think that that's sufficient. With respect to one thing, not to belabor or test patience here, but just one other example of why we do see this as an issue, counsel raised the reply briefs. So that was an example where a reply brief was mentioned, but in general, the vast majority of the time, where respondents, now interveners, reply briefs were cited, and not just cited, but quoted in full, by definition could not have addressed our reply because those were simultaneously exchanged. That was part of the problem. So this is why we think it possible to determine that the ALGL did adequately hear both issues and make a fair determination, and we've cited other examples such as that. I would be happy to answer any other questions that your honors have. Thank you. Thank you, your honors. We thank both sides, and the case is submitted.